```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION


James Hannon,                      :

       Plaintiff,                  :

     v.                            :   Case No. 2:12-cv-463

                                   :   JUDGE GREGORY L. FROST
Commissioner of Social Security,       Magistrate Judge Kemp

       Defendant.                  :
```

                    REPORT AND RECOMMENDATION

                    I.   Introduction

    Plaintiff, James Hannon, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for supplemental security income. That application was filed on June 19, 2007, and alleged that plaintiff became disabled on June 4, 2004.

    After initial administrative denials of his application, plaintiff was given a hearing before an Administrative Law Judge on September 10, 2009. In a decision dated May 3, 2010, the ALJ denied benefits. That became the Commissioner's final decision on October 13, 2011, when the Appeals Council denied review.

    After plaintiff filed this case (he obtained an extension from the Appeals Council to file it on or before May 31, 2012, and he filed it before that date), the Commissioner filed the administrative record on December 17, 2012. Plaintiff filed his statement of specific errors on February 15, 2013. The Commissioner filed a response on March 31, 2013. Plaintiff filed a "Motion for Summary Judgment," which the Court will treat as a reply brief, on April 12, 2013, and the case is now ready to decide.

    II.   Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 37 years old at the time of the administrative hearing and who has an Associates Degree as a paralegal, testified as follows. His testimony appears at pages 45-86 of the administrative record.

Plaintiff testified that he last worked for any length of time in 2006, when he spent three months managing a Subway restaurant. He was having trouble getting to work but was not fired for any reason relating to his back problems. In 2004, he was employed as a chopgun operator. He was injured while on that job. The job involved standing and lifting up to 100 pounds. Prior to that, he had done other laboring jobs, including working as a roofer's assistant. He and his children also watched the neighbor's dog for an extended period of time.

In terms of his disability, plaintiff said that in his middle or lower back, he has constant pain, and has had since the injury. He also experiences pain in his arms and legs, gets headaches, and is sick from his medication. He sometimes drops things, and may get back spasms just walking upstairs. His stomach problems had gotten worse in the last year, and they are aggravated by stress. Additionally, he experienced muscle spasms in other parts of his body which he attributed to physical abuse he received as a child.

Plaintiff thought he could sit only for a few minutes before his back, stomach or legs began to bother him. He could stand for about the same amount of time and walk only twenty or thirty yards. He could lift less than ten pounds. Those limitations had existed for at least two years. He also was restricted in the use of his right arm.

On a daily basis, plaintiff was able to attend to his personal needs, make the bed, do some ironing, dust, and shop for groceries. He has many friends and attends church on occasion.

### III. The Medical Records

The medical records in this case are found beginning on page 219 of the administrative record. The Court summarizes the

pertinent records as follows.

In 2006, plaintiff was evaluated for his parasthesia (numbness) in both his legs. He described his symptoms as variable and he also had general complaint of aches and pains in his bones and joints. He showed some slight sensory deficits in his left arm and his lower legs. An EMG showed some mild bilateral ulnar neuropathies at the elbows. (Tr. 219-23).

On January 5, 2007. Plaintiff underwent a consultative psychological evaluation which was done by Dr. Yee. Dr. Yee noted that plaintiff reported some depression and a long history of behavioral problems as well as a family history of mental illness. He also had served four years in prison for bank robbery. Dr. Yee diagnosed a mood disorder and rated plaintiff's GAF at 62, indicative of mild symptoms. Dr. Yee thought plaintiff could do simple to moderate tasks and that he might be able to work in a low stress position involving "very low people contact." (Tr. 228-35). Dr. Lewin, a state agency reviewer, later agreed with that assessment. (Tr. 271-89).

Plaintiff was also evaluated by Dr. Woskobnick for his physical complaints. Dr. Woskobnick performed a physical examination and noted some stiffness with range of motion in the cervical spine and a decreased range of motion of the dorsolumbar spine and left shoulder. Plaintiff also had trouble doing a deep knee bend. The diagnoses included chronic neck and low back pain, shoulder pain, headaches, depression and hypertension. Dr. Woskobnick did not actually assess plaintiff's ability to do work-related functions but thought that "[i]t would be beneficial to have input from a physical medicine rehabilitation doctor or orthopedist" regarding plaintiff's various complaints of pain. (Tr. 236-38).

On June 4, 2007, Dr. Cristales wrote a note stating that plaintiff had herniated cervical and thoracic discs, anxiety and

depression, acid reflux disease, and chronic neck and back sprain. He said that secondary to these conditions, plaintiff was disabled. (Tr. 257). He expressed much the same opinion a year later, (Tr. 318), and filled out a questionnaire in December of 2008 indicating that plaintiff could only sit, stand and walk for less than two hours during a workday, would miss more than four days a month due to medical issues, and could work only at the sedentary exertional level. (Tr. 348-53). Dr. Ratliff, another treating source, recommended on October 28, 2008 that plaintiff "does not work at the present time" due to various medical conditions. (Tr. 387).

    Dr. Cristales also referred plaintiff to the Ohio State University Comprehensive Spine Center for an evaluation of his neck and back pain. The impression given by that facility was a combination of lumbar strain, myofascial pain, lumbar facet joint spondylosis, and mild protrusion and disc displacement at the S1 level. Plaintiff had been sent to physical therapy but it did not help him. Various procedures or surgeries were discussed by Dr. Soveryn, the examiner. (Tr. 301-02). A lumbar facet joint diagnostic block was done on January 15, 2008, but it provided no relief. (Tr. 340-41). Dr. Soveryn administered trigger point injections in 2009. (Tr. 376).

    Plaintiff saw Dr. Bishop for complaints of right shoulder and right ankle pain. She found some tenderness on examination over the AC joint and mild pain on range of motion. His right ankle appeared normal but plaintiff reported tenderness on palpation. She diagnosed right acromioclavicular joint arthritis and status post right anterior talofibular lateral ankle sprain. He was injected with lidocaine and given a splint for his ankle. (Tr. 333-36). He also underwent a CT of the abdomen and pelvis in 2009, the results of which showed minimal diverticulosis of the sigmoid colon. (Tr. 428). The balance of the medical

records show various emergency room visits for back pain or for stomach pain, as well as a diagnosis of kidney stones.

### IV. The Vocational Testimony

A vocational expert, Mr. Brown, also testified at the administrative hearing. His testimony begins at page 87 of the record.

Mr. Brown classified plaintiff's past work as house sitter as light and unskilled. The food service manager job was light and skilled, and the fiberglass machine operator position was medium and semi-skilled, although as plaintiff performed it, it was heavy and unskilled. Finally, the job of roofer helper is a very heavy, unskilled job.

Mr. Brown was asked questions about someone who could work at the medium exertional level, who could only occasionally reach overhead on the right, and who was limited to simple to moderate tasks that are not fast-paced and do not require frequent interpersonal interaction. He responded that such a person could do plaintiff's past work as a house sitter, but not the other past jobs. If the person were also limited in his ability to bend, in addition to the other limitations stated, that person could do about 30 percent of all unskilled medium and light jobs, and 50 percent of all unskilled sedentary jobs. Examples of these jobs included assembler, inspector and machine tender. If, however, that same person were limited either as described by plaintiff's treating doctors or as indicated in his testimony, the person could not work.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 14 through 32 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff had engaged in substantial gainful activity after his alleged

onset date, working in both 2006 and 2007.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including degenerative disc disease, mild generalized osteoarthritis, right AC joint cystic changes and arthritis, mild bilateral ulnar neuropathies, gastroesophageal reflux disease, minimal diverticulosis of the sigmoid colon, anemia, hypertension, high cholesterol, and an affective disorder.  The ALJ also found that plaintiff's impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff could work at the medium exertional level except that he could only occasionally bend and reach overhead on the right.  Also, he was limited to low stress work, defined as doing simple to moderate tasks which are not fast-paced and do not require frequent interpersonal interaction with the public, coworkers, and supervisors.  The ALJ found that, with these restrictions, plaintiff could perform his past relevant work as a dog/house sitter and that he could also perform jobs identified by the vocational expert such as assembler, inspector and machine tender. Consequently, the ALJ concluded that plaintiff was not entitled to benefits.  The ALJ also denied plaintiff's request, made orally at the administrative hearing, for a supplemental hearing with a medical expert and for a psychological consultative examination.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff does not actually point to any way in which he believes the administrative decision is wrong.  He did attach some documents, one of which was before the ALJ, and a number of which were not.  The Court will comment on these documents after it reviews the ALJ's

decision using the appropriate legal standard, which is stated as follows:

   Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   Because plaintiff did not identify specific errors in the ALJ's decision, the Court will examine it in light of the arguments raised by the Commissioner in support of that decision. As the Court reads the Commissioner's memorandum, the key determinations made by the ALJ were (1) refusing to give controlling weight to the opinions of plaintiff's treating

doctors, and (2) finding that, from a physical standpoint, he could do a reduced range of medium work.  The Court will discuss these points in that order.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The starting point of this analysis is always the rationale provided by the ALJ, since the Court must rely on the ALJ's statement of reasons why a treating source opinion was rejected and may not attribute reasons to the ALJ which are not stated in the administrative decision.  See, e.g., Williams v. Astrue, 2009 WL 2148625, *8 (S.D. Ohio July 14, 2009) ("It is highly doubtful

that the Commissioner's post-hoc rationalizations can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh a treating medical source opinion as required by the Regulations"). Here, the ALJ explained her reasoning as follows.

First, the ALJ noted that there were several opinions from treating sources which did not agree with her assessment of plaintiff's residual functional capacity. However, she found that these opinions were not well-supported. They came from family physicians with no special expertise in disability and she viewed them as based primarily on plaintiff's own report of symptoms. She also concluded that the opinions did not actually cover any 12-month period and that most did not provide the type of function-by-function analysis required by law. Further, some of them appeared to be based on conditions, such a herniated disc, which could not be documented in the record. Lastly, it appeared that "emotional" factors were taken into account although none of the treating sources was a mental health professional. (Tr. 24-25).

These are all valid reasons for discounting a treating source's opinions. It is, however, somewhat troubling that the ALJ did not explain how much weight she actually gave to these opinions given the fact that she clearly did not accept them as controlling under 20 C.F.R. §416.927(d). Even if justified in rejecting a treating source opinion "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." Blakley v. Comm'r of Social Security, 581 F.3d 399, 406 (6th Cir. 2009). While the ALJ did cite to most of these factors, the fact remains that she did not indicate if the treating source opinions from Drs.

Ratliff and Cristales were given reduced weight, little weight, or no weight at all.  Further, there was no other opinion to which she gave greater weight; Dr. Woskobnick did not express any opinion about plaintiff's functional capacity, and the ALJ also rejected the Bureau of Disability Development's determination that plaintiff did not have any severe physical impairments at all.  She also appears to have declined both Dr. Woskobnick's invitation, and plaintiff's counsel's invitation, to obtain further medical review of plaintiff's pain and other symptoms relating to his neck, back and joints.  It is therefore difficult to know exactly how the ALJ came up with her very specific residual functional capacity findings, although an ALJ does have the ultimate decision-making authority as to the residual functional capacity finding and "a precise match between the ALJ's residual functional capacity assessment and a medical source opinion of record is not required."  McCoy v. Astrue, 2008 WL 565782, *6 (S.D. Ohio Feb. 29, 2008).

   The Court is not entirely persuaded that the ALJ's decision completely comports with Blakley or that there was a substantial basis for finding that plaintiff could work at the medium exertional level with only slight restrictions.  At the same time, however, the ALJ found that plaintiff could still perform a significant number of jobs even at the sedentary level.  The only opinion indicating that plaintiff could not work even at that exertional level was one of the forms completed by Dr. Cristales, and the ALJ did articulate valid reasons, supported by the record, for viewing that opinion as too restrictive and as inconsistent with the medical records.  The ALJ also stated a number of valid reasons for finding plaintiff's testimony about not being able to do even sedentary work as less than credible.  The question then becomes one of harmless error; that is, even if the ALJ did not have a solid basis for finding that plaintiff could work at the medium exertional level, or did not provide an

adequate explanation for such a finding, does her finding that he could also do a number of sedentary jobs mean that any error in her decision made no difference in the way she decided the case? The Court concludes that this is a case where harmless error exists and that it prevents the Court from reversing the ALJ's decision.

In a similar situation where, as here, the ALJ found that a claimant could do medium work, but "also found he could perform a range of light and sedentary work," in order to obtain reversal of that decision,"plaintiff would need to demonstrate that he could not perform a limited range of light work or sedentary work." See McGuire v. Comm'r of Social Security, 178 F.3d 1295, *9 (6th Cir. March 25, 1999). It is helpful to contrast this case with McCoy v. Astrue, supra, where the Commissioner also made a harmless error argument in the face of an RFC determination for medium work which did not have any evidentiary support. There, this Court said that if the record supported a finding that the claimant could also do a limited range of light work, because the vocational expert testified that someone with those limitations could work, any error in the ALJ's residual functional capacity finding would be harmless. That case was reversed, however, because the evidence also supported a finding that plaintiff could do only a limited range of sedentary work, and the vocational expert was not asked to testify about such a person. Here, on the other hand, Mr. Brown was asked exactly that question and identified jobs that someone that limited could perform.

Ultimately, although it would have been preferable for the ALJ in this case to state more explicitly how much weight, if any, was given to Dr. Ratliff's and Dr. Cristales's opinions, and to provide additional support for finding that plaintiff had the ability to work at the medium level, any errors are harmless because they did not affect the ALJ's final determination. The

-11-

record does support a finding that the plaintiff could do at least sedentary work - any opinions to the contrary simply do not enjoy the support of medical test results showing conditions severe enough to preclude such work - and the vocational expert said that someone of plaintiff's age with his work experience and education could do a significant number of jobs even if limited to sedentary work with other restrictions.  That is enough to support a finding of no disability, and there is no chance that if the Court remanded the case for a more complete explanation of the decision-making process, the outcome would be different.

  Turning briefly to the evidence plaintiff submitted with his statement of errors, the Commissioner is correct that none of this evidence would change the result in this case.  Some of it is dated well after the ALJ made her decision, and none of it adds much of significance to the record.  Although one of plaintiff's new items of evidence - that he has been relieved of his student loan repayment obligation due to disability - might seem to relate to the same question presented here, 20 C.F.R. §416.904 provides that "[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind."  Although, if that decision is made before an ALJ decides the social security case, the ALJ must consider it as part of all the evidence, <u>see</u> Social Security Ruling 06-3p, that is not what happened here.  The ALJ in this case did not know about the other disability decision because it was made several months after the ALJ's May, 2010 decision.  Nothing in that later decision suggests to the Court that if the ALJ were now asked to take it into account she would change her mind.  Consequently, there is nothing in any of the documents which plaintiff attached to his statement of errors which would justify sending this case back to the ALJ to have her take another look at the issue.  <u>See, e.g., Martin v. Astrue</u>,

2012 WL 668814, *7 (S.D. Ohio Feb. 29, 2012)("[n]ew evidence on an issue already fully considered is cumulative, and is not sufficient to warrant remand of the matter"), adopted and affirmed 2012 WL 1123233 (S.D. Ohio Apr. 3, 2012).

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors and his motion for summary judgment be overruled and that the Court enter judgment in favor of the defendant Commissioner of Social Security.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge